[Cite as *Brown v. Brown*, 2017-Ohio-8938.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

RUSSELL A. BROWN, TRUSTEE,

    PLAINTIFF-APPELLEE,                CASE NO. 6-17-10

    v.

DANNY L. BROWN, ET AL.,

    DEFENDANTS-APPELLEES,
    -and-                             O P I N I O N

SANDRA K. HASSAN FARABEE, ET AL.,

    DEFENDANTS-APPELLANTS.

Appeal from Hardin County Common Pleas Court
Probate Division
Trial Court No. CA 20169001

**Judgment Affirmed**

Date of Decision:   December 11, 2017

APPEARANCES:

    *Howard A. Traul, II* for Appellants

    *John M. Tudor* for Appellee Russell A. Brown, Trustee and Personally

    *J. Michael Hood* for Appellees, Danny L. Brown and Cathy Harris

**SHAW, J.**

{¶1} Defendants-appellants, Sandra Farabee, Robert Lambert, and Jack Lambert ("Appellants"), appeal the April 14, 2017 judgment of the Hardin County Court of Common Pleas, Probate Division, terminating the "Brown Family Trust" and distributing the Trust assets equally to plaintiff-appellee, Russell A. Brown ("Anthony"), and his siblings, defendants-appellees, Daniel Brown and Cathy Harris (collectively referred to as "Appellees"). On appeal, Appellants challenge several of the trial court's findings supporting its conclusion to distribute the Trust assets to only the three Appellees upon termination of the Trust.

*Relevant Factual Background*

{¶2} The parties to this action are three siblings and three step-siblings. Sometime in the early 1970's Appellees' father, Russell J. Brown ("Russ, Sr."), moved in with Appellants' mother, Rose A. Brown ("Rose"). During this time, Appellants lived with Russ, Sr. and by all accounts viewed him as a father figure. Russ, Sr. and Rose eventually married in 1978, when Russ, Sr. divorced his wife after all three Appellees had "graduated."

{¶3} In 1985, Russ, Sr. and Rose executed reciprocal Wills leaving their probate estates to the surviving spouse and naming the six children as beneficiaries of the surviving spouse's estate in equal shares.

{¶4} In 2000, Rose and Russ, Sr. executed a quitclaim deed, which placed 129.54 acres of land into the "Brown Family Trust," a revocable trust. Rose died

-2-

on June 14, 2013, and Russ, Sr. made his election to take under her Will. Russ, Sr. executed a new Will on September 18, 2013, wherein he included the following provision modifying the distribution of his probate estate from his prior 1985 Will:

> **2.02. I give, devise and bequeath all the rest, residue and remainder of my estate, real or personal, wherever situated and whenever acquired, unto my lineal descendants in equal shares, *per stirpes*. At the time of the making this Will, my descendants consist of Russell A. Brown, \* \* \* Dan Brown, \* \* \* and Cathy Harris. By such provision I intend that should any of my children predecease me, their share in equal share shall descend *per stirpes* to their lineal descendants, if any, and if none to be divided equally between my surviving children or their lineal descendants in equal share *per stirpes*. In making the provisions of this article in my Will, I am not unaware of the existence of my step children, being the children of my late wife, Rose Brown, but herewith provide only for my own children.**

(Doc. No. 73).

{¶5} On January 10, 2014, Russ, Sr. executed an "Affidavit of Successor Trustee," stating that he and Rose were Co-Trustees of the Brown Family Trust and that after Rose's death he became the sole Successor Trustee pursuant to the Trust Agreement.

{¶6} Russ, Sr. died on August 26, 2014. His 2013 Will was subsequently admitted to probate and no contest was made challenging the Will. Anthony was appointed executor of Russ, Sr.'s estate. The land contained in the Brown Family Trust, and the proceeds therefrom, were not included in either Rose's or Russ, Sr.'s probate estates.

**{¶7}** On September 30, 2014, Anthony executed an "Affidavit of Successor Trustee," stating he was the "presumed Successor Trustee" of the Brown Family Trust.

*Procedural History*

**{¶8}** On February 16, 2016, Anthony, as Trustee, filed a complaint naming all six children of Rose and Russ, Sr., individually, as defendants and seeking a determination from the trial court regarding several aspects of the Brown Family Trust. The complaint stated that Anthony, as Russ, Sr.'s executor, was in possession of a check for proceeds from the land owned by the Brown Family Trust that needed to be deposited, but no account existed for the Trust. Anthony and his counsel were unable to find the Trust Agreement or any documents creating the Brown Family Trust.[1] Anthony assumed possession of the Trust assets as "presumed Successor Trustee."

**{¶9}** Anthony and his counsel later discovered an "Abstract of Trust Agreement," which identified Rose and Russ, Sr. as "Co-Trustors" and "Co-Trustees" and further provided that:

> **3. Successor Trustees. Upon removal of both husband and wife as Co-Trustees, the joint Co-Successor Trustees are designated as**

---

[1] The record indicates that the attorney who drafted the Brown Family Trust Agreement had been disbarred and is deceased. The record further indicates that Russ, Sr. had an oral sharecropping agreement with another farmer for a 50/50 split of the proceeds from the land in trust. The checks for the proceeds were issued to Russ, Sr. who was able to deposit the checks into his account without issue. However, after Russ, Sr.'s death, Anthony received a check from the sharecropping tenant and he executed an "Affidavit of Successor Trustee" declaring him the "presumed successor trustee" so that he could handle the affairs related to the Trust assets, such as accepting rent, extending the sharecropping agreement, and paying taxes.

> **RUSSELL A. BROWN [Anthony] and SANDRA K. STONE [nka Farabee]. In the event either of them should become incompetent or otherwise unable or unwilling to serve, then the other shall serve alone as Trustee hereof.**

(Doc. No. 76). However, no person, other than Rose and Russ, Sr., was identified as a beneficiary in the "Abstract of Trust Agreement." Thus, there was no provision giving guidance as to how the Trust assets were to be distributed after the deaths of both Rose and Russ, Sr.

{¶10} Accordingly, the complaint initiating this case sought a judgment from the trial court determining the identity of the successor beneficiaries under the Trust, if the trial court determined there was a trust, and to whom the income and proceeds of the liquidation of the Trust assets should be distributed, when such distribution should be made, and when the Trust should be terminated.

{¶11} Appellants—i.e., Rose's children, filed a counter-claim and cross-claim asserting that they were entitled to fifty percent of the Trust assets. Appellants requested the trial court find Sandra Farabee was the Co-Trustee of the Brown Family Trust pursuant to the "Abstract of Trust Agreement;" that an accounting should be ordered; and that a judgment should be issued liquidating the Trust, distributing fifty percent to Appellants, and terminating the Trust.

{¶12} Appellants filed a motion for summary judgment which was overruled by the trial court and the case proceeded to a bench trial on January 23, 2017, where several witnesses testified and numerous exhibits were admitted. Based upon the

evidence presented, the trial court issued Findings of Fact on February 15, 2017. Specifically, the trial court found relative to this appeal that Russ, Sr. and Rose were settlors of "Brown Family Trust," a revocable trust established on June 15, 2000, and that the "Abstract of Trust Agreement" identified two beneficiaries, Rose A. Brown and Russell J. Brown, who were also the initial Co-Trustees. (Doc. No. 80 at ¶¶ 7- 8).

{¶13} The trial court further found that on June 15, 2000, Russ, Sr. and Rose executed a quitclaim deed for the 129.54 acres of land to the Trust granting it to themselves as Co-Trustees. The trial court found that the quitclaim deed evidenced that the property was acquired solely by Russ, Sr. with Rose having only a dower interest in the property prior to placing the land into the Trust. The trial court also found that "the act of titling the real estate to the Trust removed personal ownership from either/or both Russell J. Brown and Rose A. Brown and exhibited an intent that the property not be included as part of their estates." (*Id*. at ¶ 13).

{¶14} The trial court examined the "Abstract of Trust Agreement" and determined from that document that the Co-Trustees—i.e., Rose and Russ, Sr.—had the power to transfer the Trust assets and the survivor of the two had a right to a power of appointment exercisable by Will. However, the trial court noted that there was no evidence presented that action was taken by either Rose or Russ, Sr. consistent with these powers.

**{¶15}** At the time of trial, the 129.54 acres were still titled in the name of the Brown Family Trust and there was approximately $38,000 of proceeds from the land in a bank account established by Anthony under the name "Brown Family."[2] Based upon the evidence before it, the trial court could not determine who the beneficiaries were intended to be after the deaths Rose and Russ, Sr. and further determined that "[b]ecause the purposes of the Trust cannot be ascertained they are impossible to achieve."[3] (Doc. No. 80 at ¶ 40); see R.C. 5804.10(A).

**{¶16}** In a separate document, the trial court set forth its Conclusions of Law based upon these findings, after giving the parties an opportunity to file their "exceptions" to the trial court's Findings of Fact and to brief the legal issues. The trial court found that a valid revocable trust was established, and that no evidence of revocation by Rose or Russ, Sr. was presented at trial. Having found that there was no ascertainable beneficiary of the Trust after the deaths of Rose and Russ, Sr. and that the purposes of the Trust could no longer be achieved, the trial court concluded that the Trust should be terminated. Thus, the primary concern of the trial court was how to distribute and to whom to distribute the Trust assets upon the termination of the Trust in the absence of any instruction from a trust agreement.

---

[2] Anthony testified that he could not deposit the checks in the Trust's name because there was not proper documentation of the Trust's existence for the bank to establish an account. In the alternative, he created an account under the "Brown Family" to separately maintain the proceeds and manage the Trust assets until a determination by the trial court was made.

[3] The trial court surmised "the following intent of settlors at the time the trust was created: (1) to avoid and/or minimize estate taxes; and (2) to provide income to settlors during their lifetimes." (Doc. No. 80 at ¶ 31). Thus, the trial court found that both of these objectives were no longer achievable after deaths of Rose and Russ, Sr.

**{¶17}** The trial court examined the relevant statutes on the issue and observed that it could "not find any statute directly on point to help resolve this conundrum." (Doc. No. 88 at 10). Nevertheless, the trial court looked to the statutory provisions for guidance and concluded the following:

> **By agreement of the parties and without objection, the Court took judicial notice of the entire contents of the estates of both Russell J. Brown and Rose A. Brown. Both estates were fully administered and neither is currently opened. The Court would note that Mrs. Brown, the first to die, left her entire estate to her husband, Russell J. Brown. Were she entitled to any of the assets back from the trust or were she a beneficiary getting back assets from the trust, they would pass through her estate to her husband [pursuant to her 1985 Will]. As the evidence in this case clearly established, including the Court's file for the estate of Russell J. Brown, he left his entire estate to his three children, being plaintiff and defendants Brown. In either scenario, whether the assets passed from wife to husband and then to his children or merely would have passed directly to Mr. Brown (because Mrs. Brown only had a dower interest), the outcome would be the same. Ultimately, the assets would be divided equally between the three children of Russell J. Brown [pursuant either to Russ, Sr.'s 2013 Will or under the "law of jurisdiction" as the beneficiaries or the heirs are the same].**

(Doc. No. 88 at 9). The trial court further determined that there was no adequate remedy at law and exercised "its equitable powers" to provide the parties relief. (*Id.* at 11). The trial court ordered the Trust be terminated and the assets be distributed directly to Appellees in equal shares, without re-opening Russ, Sr.'s estate. The trial court's orders were journalized in its April 14, 2017 Judgment Entry.

**{¶18}** Appellants subsequently filed this appeal, asserting the following assignments of error.

-8-

## ASSIGNMENT OF ERROR NO. 1

**THE PROBATE COURT ERRED AS A MATTER OF LAW IN FINDING THAT IT HAD NO AUTHORITY TO DETERMINE THE BENEFICIARIES OF THE TRUST BECAUSE THE LAW PERMITS A TRIAL COURT TO DETERMINE THE TERMS OF A TRUST EVEN WHEN THE TRUST DOCUMENT IS MISSING; THEREFORE, THE PROBATE COURT'S APRIL 14, 2017 ENTRY SHOULD BE REVERSED.**

## ASSIGNMENT OF ERROR NO. 2

**THE PROBATE COURT ERRED AS A MATTER OF LAW IN FAILING TO FIND THE SETTLORS INTENDED ALL SIX CHILDREN TO BE BENEFICIARIES UNDER THE BROWN FAMILY TRUST; THEREFORE, THE PROBATE COURT'S APRIL 14, 2017 ENTRY SHOULD BE REVERSED.**

## ASSIGNMENT OF ERROR NO. 3

**THE PROBATE COURT ERRED AS A MATTER OF LAW IN INTERPRETING OHIO REVISED CODE SECTION 5801.01(S) AND IN FINDING ROSE WAS NOT A SETTLOR OF THE BROWN FAMILY TRUST; THEREFORE, THE PROBATE COURT'S APRIL 14, 2017 ENTRY SHOULD BE REVERSED.**

## ASSIGNMENT OF ERROR NO. 4

**THE PROBATE COURT ERRED AS A MATTER OF LAW DURING THE TRIAL ON PAGE 181 OF THE TRIAL TRANSCRIPT IN FINDING ROSE'S STATEMENTS WERE HEARSAY; THEREFORE, THE PROBATE COURT'S APRIL 14, 2017 ENTRY SHOULD BE REVERSED.**

## ASSIGNMENT OF ERROR NO. 5

**THE PROBATE COURT ERRED AS A MATTER OF LAW IN REFUSING TO PERMIT TESTIMONY REGARDING THE REAL PROPERTY ACQUISITION WHEN THE LAMBERTS DENIED THAT RUSS, SR. OWNED THE PROPERTY IN FEE**

**SIMPLE; THEREFORE, THE PROBATE COURT'S APRIL 14, 2017 ENTRY SHOULD BE REVERSED.**

{¶19} For ease of discussion, we elect to address the majority of the assignments of error together.

*First, Second, Third, and Fifth Assignments of Error*

*Standard of Review*

{¶20} We review a trial court's determination of matters of law in a declaratory judgment action under a *de novo* standard of review. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 13. We further note that the trial court, as the trier of fact, had the advantage of observing witnesses at trial and assessing their credibility. Thus, we will defer to any findings relative thereto. *See Delp v. Delp*, 6th Dist. Lucas No. L-16-1242, 2017-Ohio-7774, ¶ 21, citing *Gorby v. Aberth*, 9th Dist. Summit No. 28021, 2017-Ohio-274, ¶ 19.

*Discussion*

{¶21} In these assignments of error, Appellants challenge specific aspects of the trial court's ruling. In their first and second assignments of error, Appellants argue that the trial court erred in determining that it could not ascertain the successor beneficiaries after Rose's and Russ, Sr.'s deaths from the "Abstract of Trust Agreement" and the extrinsic evidence presented at trial. Specifically, Appellants assert the evidence supports a finding that Rose and Russ, Sr. intended for the Trust to benefit all six children after their deaths. Appellants also claim in the third and

fifth assignments of error that the trial court erred in concluding that Rose's interest in the land placed in the Trust was limited to a dower interest and that she did not have the same ownership rights as Russ, Sr. being a Co-Settlor.

{¶22} At the outset, we note that on appeal Appellants contend that the trial court erred in failing to consider any parol evidence outside of the "Abstract of Trust Agreement" in reaching its determination that the successor beneficiaries of the Trust could not be ascertained in this case. Our review of the record simply does not support this contention. Rather, the record reflects that the trial court gave Appellants ample opportunity at trial to support their position that Rose and Russ, Sr. intended all six children to be the successor beneficiaries of the Brown Family Trust.

{¶23} The record indicates that the trial court considered testimony from multiple witnesses, including from Appellants Sandra Farabee and Jack Lambert, to assist the court in ascertaining the successor beneficiaries of the Trust in the absence of a Trust Agreement. However, the evidence presented at trial demonstrated that, whether by omission or design, Russ, Sr.'s and Rose's children knew little about the Brown Family Trust and the purposes of its creation, let alone the principal terms of the Trust—i.e., whether there were any intended successor beneficiaries after Rose's and Russ, Sr.'s deaths. Moreover, none of the witnesses at trial recalled ever seeing a Trust Agreement.

{¶24} For instance, Anthony testified that he first learned of the Trust after he began assisting, his father, Russ, Sr., with writing checks when Russ, Sr.'s Parkinson's Disease symptoms inhibited him from completing certain functions. Anthony recalled his father instructing him that "There's property tax, things in there on the counter. Get it. You need to pay it." (Tr. at 79-80). The notice identified the Brown Family Trust and when he inquired further Anthony remembered Russ Sr. replying, "Never mind that. Just pay the taxes." (Id.) Anthony explained "I didn't stick my nose into my dad's business, and that's as much explanation as I got out of him on it." (Id.) Michael Grossman, the farmer who farmed the land held in the Brown Family Trust, testified that he began farming the land in 1997 or 1998. He was not made aware that the land was held in trust until after Russ, Sr.'s death. Sandra Farabee also testified that she had never seen a Trust Agreement. Her only recollection of the Trust prior to Rose's and Russ, Sr.'s deaths, was seeing an envelope on the counter addressed to the "Brown Family Trust."

*Settlors' Intent Creating the Brown Family Trust*

{¶25} Despite the lack of parol testimony evidence regarding the creation and principle terms of the Trust, and the primary documentary evidence purporting to establish the Trust and to convey its principle terms being an unrecorded and unauthenticated "Abstract of Trust Agreement," the trial court nevertheless found

that Rose and Russ, Sr. created a valid revocable trust. (*See* Doc. No. 80 at ¶ 34). We note that the "Abstract of Trust Agreement" specifically states that:

> **18. Trust Agreement to Govern. The use of this Abstract of Trust Agreement is for convenience only, and the Trust Agreement is *solely controlling as to provisions and interpretations*, and any conflict between this Abstract and the Trust Agreement shall be decided in favor of the Trust Agreement.**

(Doc. No. 26 at 3) (emphasis added). In light of such a disclaimer, we question whether the "Abstract of Trust Agreement" could be relied upon to definitively establish the existence of a valid revocable trust. Our reservations notwithstanding, we give deference to the weight the trial court accorded this evidence in rendering its decision.

{¶26} The trial court found that the "Abstract of Trust Agreement" contained a provision which provided insight into the purpose of the Trust and Rose's and Russ's Sr.'s intent in creating the Brown Family Trust:

> **5. Division of Trust Upon Death of Co-Trustor. Upon the death of either Co-Trustor, the trust property becomes allocated into two (2) trusts, designated as the Survivor's Trust and the Bypass Trust, which at the time the Bypass Trust becomes Irrevocable. The Trustee may make distribution in the Survivor's Trust and Bypass Trust in such a manner so as to qualify for the alternate valuations date under Internal Revenue Code Section 2032.**

(Doc. No. 26 at 3).

{¶27} The trial court ascertained that the intent of Rose and Russ, Sr. at the creation of the Trust in 2000 was "A) to avoid and/or minimize estate taxes;" and "B) to provide income to [Rose and Russ, Sr.] during their lifetimes." (Doc. No. 80

-13-

at ¶ 31). The trial court's finding in this regard is consistent with the testimony indicating that none of Rose's or Russ, Sr.'s children were explicitly made aware of the existence of the Brown Family Trust and were not told of any of the Trust's principal terms.[4] Moreover, neither Rose's or Russ, Sr.'s Last Will and Testament expressly mentioned the Brown Family Trust. Thus, it is reasonable to conclude, as the trial court did, that Rose's and Russ, Sr.'s primary intent in creating the Brown Family Trust was to establish a vehicle to provide income for them during their lifetimes, as opposed to an estate planning tool for passing the property to next generation.[5] Accordingly, we find that the record supports the trial court's conclusion that the Brown Family Trust was created primarily with the intent to benefit Rose and Russ, Sr. during their lifetimes.

*Successor Beneficiaries*

{¶28} The crucial matter before the trial court in this case was determining the method of distribution of the Trust assets after Rose's and Russ, Sr.'s deaths. We acknowledge that the "Abstract of Trust Agreement" contains a provision alluding to the distribution of Trust assets after both Rose's and Russ, Sr.'s deaths, which reads:

> **9. <u>Distribution after Death of Both Co-Trustors.</u> Following the death of both Co-Trustors, the trust continues or is distributed in**

---

[4] The trial court's finding is also consistent with Anthony's testimony regarding Russ, Sr.'s reluctance to share any details regarding the Trust.

[5] Anthony also testified that Rose and Russ, Sr. were very concerned about being placed in a nursing home facility and wanted to remain at their residence during their old age. Anthony explained that he and his wife "kept them out of a home" by assisting Rose and Russ, Sr. with daily tasks. (Tr. at 78).

> **whole or in part for the benefit of other named beneficiaries according to the terms of the trust.**

(Doc. No. 26 at 3). However, without a corresponding Trust Agreement stating the names of the successor beneficiaries, this provision of the "Abstract of Trust Agreement" is of little value in resolving this matter. Thus, the trial court concluded that "the Court does not believe that it is endowed with the power to merely 'make up' provisions of the trust," and found it could not determine from the evidence who the beneficiaries of the Trust were intended to be after the deaths of Rose and Russ, Sr. (Doc. No. 84 at 4).

{¶29} On appeal, Appellants specifically take issue with the trial court's finding that it could not ascertain the successor beneficiaries of the Brown Family Trust from the evidence presented at trial. Appellants claim that Rose's and Russ, Sr.'s 1985 Wills, which provide for all six children equally after the death of the survivor, the inclusion of the "Co-Successor Trustee" provision in the "Abstract of Trust Agreement," which appoints both Sandra Farabee and Anthony Brown (one child from each family) to be "Co-Successor Trustees," and the testimony at trial that demonstrated the Appellants viewed Russ, Sr. as a father figure establish that the six children of Rose and Russ, Sr. were the intended successor beneficiaries under the Trust.

{¶30} We disagree with the Appellants that "Co-Successor Trustee" provision in the "Abstract of Trust Agreement" can be so convincingly relied upon

to reach this determination, and find that the mere mention of Sandra's and Anthony's names as Co-Successor Trustees, upon the removal of *both* Rose and Russ, Sr., is not dispositive to the issue of how to distribute the Trust assets after the deaths of Rose and Russ, Sr. Rather, such language is consistent with the trial court's determination that the Brown Family Trust was established primarily to benefit Rose and Russ, Sr. during their lifetimes.

{¶31} We also do not find Appellants' argument pertaining to Rose's 1985 Will persuasive in determining how Rose and Russ, Sr. intended the Trust assets to be distributed after their deaths. Had it been Rose's specific intent, as the Appellants contend, to distribute the Trust assets to all six children, according to the "Abstract of Trust Agreement," Rose could have specifically provided for such a contingency in her Will.[6] However, the record does not indicate such a contingent provision was made.

{¶32} As previously discussed, we specifically decline to accept Appellants' characterization of the record on appeal that the trial court relied solely upon the "Abstract of Trust Agreement," while refusing to consider any parol evidence, to

---

[6] *See* paragraph 12 of the "Abstract of Trust Agreement," which states:

> **12. Character of All Property Unchanged Upon Transfer to Trust. All property transferred into the trust which had an original source as joint property shall remain joint property and all property which had an original source as a separate property shall remain separate property of the contributing spouse,** *unless other provision shall have been made therefore.*

(Doc. No. 76 at 2) (emphasis added).

conclude that it could not ascertain the successor beneficiaries from the evidence presented. To the contrary the trial court acknowledged:

> **While the Court understands its power to interpret the language of documents, the Court does not believe that authority extends to inventing or making up language from whole cloth. The Court's role is more appropriately to try to figure out what the settlor intended from the language that the settlor used rather than create language in an attempt to determine an outcome intended by the court or a litigant.**
>
> \*\*\*
>
> **The Abstract of Trust Agreement does not contain any language for the Court to even try to construe relating to the purpose of the trust after the death of Russell J. Brown and Rose Brown or the intent of the settlors other than their initial intent \* \* \*. The Court acknowledges that there was some extrinsic evidence proffered (though in the Court's opinion said evidence was lacking in both credibility and weight) concerning these issues. The Court does not believe it would be proper to attempt to invent an intent and purpose and then try to project them upon the settlors. There is simply no language for the Court to construe, interpret or evaluate. Likewise, with regard to these issues there is no provision to consider. The same is true as to contingent beneficiaries. The Court interprets the case law as requiring some language before the Court can use extrinsic or parole [sic] evidence to interpret the intent or purpose of a provision.**

(Doc. No. 88 at 6-7).

{¶33} Appellants direct our attention to case law in support of their position, but a close reading of those cases reveals a key distinction. *See e.g.*, *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208; *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24. For example, in each of these cases the primary instrument to be construed—i.e., the trust agreement (Arnott) and the insurance contract

(Saunders)—was properly introduced into the record before the trial court for its terms to be examined. Neither of these cases cited by Appellants involve the precise situation in the case at bar where the primary document, which is the keystone of the declaratory judgment determination, is missing and cannot be located.

{¶34} Moreover, we acknowledge Appellants' reliance on Ohio law which does not require a trust to be created by a written instrument and permits the creation of an oral trust. However, the statute governing oral trusts explicitly states that "a trust is not required to be evidenced by a trust instrument, but the creation of an oral trust and its terms may be established only by clear and convincing evidence." R.C. 5804.07. Here, notwithstanding the fact that the record contains some evidence indicating that the Trust was created by a written instrument, Appellants overlook the statutory requirement that the terms *may* be established *only* by clear and convincing evidence. In this instance, the trial court concluded that there was no evidence aside from the "Abstract of Trust Agreement" which met this standard.

{¶35} In sum, the record reveals that the trial court prudently examined the relevant evidence presented at trial and concluded that that evidence was insufficient to determine the manner in which the Trust assets were intended to be distributed after the deaths of Rose and Russ, Sr. Based upon the evidence in the record, we find no error with the trial court's view that the extraneous pieces of parol evidence relied upon by Appellants would require it to "make up" or "invent" terms to

identify the successor beneficiaries and determine the purpose of the Trust after Rose's and Russ, Sr.'s death in the absence of the Trust Agreement.

**{¶36}** For these reasons, we find no error with the trial court concluding that because the primary initial purposes of the Trust could longer be achieved and no successor beneficiaries could be ascertained, the Brown Family Trust must be terminated. *See* R.C. 5804.12(A), (B) (granting the trial court authority to terminate a trust because of "circumstances not anticipated by the settlor," or "if continuation of the trust on its existing terms would be impracticable"); *see also* R.C. 5804.10(A) (prescribing additional authority for termination when "a court determines that no purpose of the trust remains to be achieved, or a court determines that the purposes of the trust have become unlawful or impossible to achieve").

*Distribution of Assets Upon the Termination of Trust*

**{¶37}** Appellants do not dispute the trial court's decision to terminate the Brown Family Trust on appeal. Rather, they contend that the trial court erred when it ordered the Trust assets to be distributed only to Appellees upon the Trust's termination. Underlying their claim, in part, is the Appellants' assertion that the trial court mischaracterized Rose's ownership of the Trust assets both prior to the land being placed in trust and after the Trust was established and Rose was named a Co-Settlor. While Appellants admit that Russ, Sr. was the titled owner of the land before the creation of the Brown Family Trust, they dispute the trial court's finding that Rose's ownership of the land was limited to a dower interest.

**{¶38}** One rationale stated by the trial court in its "Conclusions of Law" was based upon its reliance on R.C. 5801.01(S) to reason that Rose only contributed her dower interest to the Trust and was a settlor only with respect to that portion of the Trust property.[7] The trial court determined that because Rose predeceased Russ, Sr., her dower interest was eliminated and Russ, Sr. retained sole ownership of the property in the Trust after her death. Based upon this rationale, the trial court concluded that Russ's children alone were entitled to distribution of the Trust assets.

**{¶39}** However, a review of the trial court "Conclusions of Law" establishes that the trial court employed more than one rationale to support its ultimate decision to distribute the Trust assets only to Appellees. The trial court engaged in a thorough analysis of relevant statutory provisions to determine that the Trust assets should be distributed to Appellees, Russ, Sr.'s children. The trial court found direction in R.C. 5804.09, which governs noncharitable trusts without ascertainable beneficiaries.

> **(A) A trust may be created for a noncharitable purpose without a definite or definitely ascertainable beneficiary or for a noncharitable but otherwise valid purpose to be selected by the trustee. A trust created for a noncharitable purpose may not be enforced for more than twenty-one years.**
>
> **(B) A trust authorized by this section may be enforced by a person appointed in the terms of the trust or, if no person is so appointed, by a person appointed by the court.**

---

[7] Section 5801.01(S) of the Revised Code defines a "Settlor" as "a person, including a testator, who creates, or contributes property to, a trust. If more than one person creates or contributes property to a trust, each person is a settlor of the portion of the trust property attributable to that person's contribution except to the extent another person has the power to revoke or withdraw that portion."

**(C) The property of a trust authorized by this section may be applied only to its intended use, except to the extent the court determines that the value of the trust property exceeds the amount required for the intended use. Except as otherwise provided in the terms of the trust,** *property not required for the intended use must be distributed to the settlor if then living or to the settlor's successors in interest.*

(emphasis added).

**{¶40}** The trial court also sought guidance from R.C. 5808.17(D), which further addresses distribution upon termination of a trust, and provides in pertinent part:

**(D) If * * * an administration of the beneficiary's estate is not open, the trustee, without liability, may make the distribution directly to the beneficiary's heirs or devisees without requiring the opening or re-opening of estate administration proceedings if the trustee does not know of an adverse claim to the distribution and one of the following applies:**

**\* \* \***

**(2) The beneficiary's estate was administered as a testate estate in the jurisdiction in which the deceased beneficiary was domiciled at death, and the trustee does both of the following:**

**(a) Distributes the <u>personal property</u> included in the distribution to the** *residuary devisee or devisees under the beneficiary's will, in the same manner as the personal property would have been distributed in that administration if it had been part of the beneficiary's testate estate***;**

**(b) Distributes the <u>real property</u> included in the distribution to** *the person or persons the trustee reasonably determines would have received the real property under the law of the jurisdiction or jurisdictions in which the real property is located.*

(emphasis added).

{¶41} While explicitly disavowing any reliance upon these statutory provisions as being "definitive," the trial court further found it necessary to exercise "its equitable powers[8] and [looked] to said code sections for guidance" and noted the "two potential resolutions of the asset distribution problem in this case set forth above both however, end up ultimately with the same result." (Doc. No. 88 at 10). The trial court recognized the parties' need for resolution in this case without an adequate remedy at law under these specific circumstances where there is a missing trust agreement and insufficient evidence in the record to ascertain the purpose of the trust after the death of the primary beneficiaries with no successor beneficiaries specifically named. Thus, the trial court fashioned an equitable remedy using R.C. 5808.17(D) and R.C. 5804.09(C) as a framework for distributing the Trust assets after termination—both of which direct the assets to be distributed to Appellees either under Russ, Sr.'s 2013 Will or the "law of the jurisdiction."

{¶42} We acknowledge Appellants' position on appeal that, notwithstanding the initial marital or separate nature of the property, [9] Rose maintained equal ownership rights to the Trust property as a Co-Settlor by powers of revocation and withdrawal which appear to be conferred her in the "Abstract of Trust Agreement," and therefore, Appellants as her successors in interest could have been entitled to a

---

[8] Pursuant to R.C. 2101.24(C), "The probate court has plenary power at law and in equity to dispose fully of any matter that is properly before the court, unless the power is expressly otherwise limited or denied by a section of the Revised Code." Thus, where a matter is properly before the probate court, it has full power to dispose of the case (unless the power is expressly otherwise limited).
[9] We note that the record suggests that all but 18 of the 129.54 acres was inherited by Russ. It appears from the record that the remaining acreage was purchased during the marriage.

half share of the Trust assets. Nevertheless, we do not find their argument on appeal that the additional evidence they wished to present regarding the character of the real estate prior to and during the administration of the Trust while Rose was alive would be determinative in resolving the primary issue of distribution in this case based upon the following discussion and therefore find no error in the trial court excluding it.

{¶43} In reviewing the trial court's method of distribution of the Trust assets, we note that the quit claim deed specifically states the following in the granting clause transferring the 129.54 acres into the Trust.

> **RUSSELL BROWN AND ROSE A. BROWN HUSBAND AND WIFE, who acquired title as RUSSELL BROWN grants to, RUSSELL BROWN AND ROSE A. BROWN, TRUSTEES, *or his successor in trust*, under the Brown Family Trust, dated 6/15/00, and any amendments thereto, the following described real property located in the County of Hardin State of Ohio[.]**

(Doc. No. 69) (emphasis added).

{¶44} This notwithstanding, we also find support in the record for the trial court's equitable decision based upon the specific facts and circumstances of this case. Even assuming *arguendo* that Rose, as Co-Settlor, retained equal ownership rights to the Trust assets, the fact remains unchanged that there is no Trust Agreement or any other credible evidence found by the trial court directing the distribution of the Trust property after Rose's death. It is undisputed that Rose predeceased Russ, Sr. By operation of her 1985 Will her probate estate passed to

Russ, Sr. Moreover, the "Abstract of Trust Agreement," also states that Rose and Russ, Sr. "are designated as Co-Trustees, to serve until the death, resignation or incompetence of one of them, and the remaining Co-Trustee shall continue to act as the sole Trustee." (Doc. No. 76 at ¶ 2). This provision is consistent with the common thread found throughout this case that the Trust was created to provide for Rose and Russ, Sr. during their lifetimes and is also consistent with the couples' 1985 Wills, which left everything not otherwise specified to the survivor of the two, who in this instance was Russ, Sr.

{¶45} Accordingly, we find no error with the trial court's equitable application of R.C. 5808.17(D) and/or R.C. 5804.09(C) to the unique facts of this case. Moreover, we agree with the trial court's interpretation that either statute would direct the distribution of the Trust property to Appellees. Furthermore, Appellants have presented us no compelling alternative to find the trial court's distribution to be error. Based on the foregoing, we overrule the first, second, third, and fifth assignments of error.

*Fourth Assignment of Error*

{¶46} In their fourth assignment of error, Appellants assert that the trial court erred in excluding a statement allegedly made by Rose, prior to her death, to her son as hearsay. The decision to admit or exclude evidence rests in the trial court's sound discretion and we will not reverse its decision absent an abuse of that discretion. *Wightman v. Consolidated Rail Corp.*, 86 Ohio St.3d 431, 437 (1999). Abuse of

discretion it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶47} The statement raised in this assignment of error occurred at trial during Appellant Jack Lambert's testimony. On direct examination, Jack was asked when he first became aware of the "Brown Family Trust." Jack explained that he had had a conversation with Rose, his mother, about the Trust. The trial court permitted counsel to continue to inquire about the conversation over objection from opposing counsel until Jack began to testify to what Rose had said about the distribution of the Trust. The trial court sustained opposing counsel's objection denying Jack the opportunity to answer.

{¶48} Appellants maintain on appeal that Jack was going to testify at trial regarding Rose's statements to him "that the Trust assets were to be distributed in accordance with the 1985 Wills." (Appt. Brief at 12). They argue that Rose's statement to Jack was admissible under exceptions to hearsay in Evid.R. 801(D)(2), Evid.R. 804(B)(5)(a), and Evid.R. 803(3). Appellants cite no authority supporting their argument that Rose's statement to Jack is admissible under Evid.R. 801(D)(2) (as a party opponent) or under Evid.R. 804(B)(5)(a) (as a Co-Trustee), and thus we do not find their positions bolstered by mere assertions as to the applicability of these hearsay exceptions to be persuasive.

{¶49} Moreover, even assuming *arguendo* that Rose's statement to Jack was admissible because it was a statement of her present state of mind and reflected her

intent for the future under Evid.R 803(3), we find that the exclusion of the statement in the instant matter was harmless. Rose's purported statement to Jack that the Trust property was to be distributed in the same matter as the 1985 Wills does not shed any further insight as to how the Trust assets were intended to be distributed absent the existence of a trust agreement. Contrary to Appellants' position, it could be maintained that the trial court distributed the Trust assets in accordance with Rose's 1985 Will, which directed her probate estate to pass to Russ, Sr. in the event she predeceased him. As previously mentioned, there were no contingencies in Rose's Will with regard to her interest in the Trust property. Rather, everything passed to Russ, Sr. as the surviving spouse. In this respect, the trial court's distribution of the Trust assets is consistent with Rose's 1985 Will. Accordingly, we do not find the trial court's exclusion of the statement to be reversible error and the fourth assignment of error is overruled.

{¶50} For all these reasons, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**