[Cite as *Estate of Parkins v. Parkins*, 2019-Ohio-1941.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

ESTATE OF JON PARKINS,

    PLAINTIFF-APPELLEE,              CASE NO. 1-18-50

    v.

VALERIE PARKINS, NKA MICHAEL,     O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Domestic Relations Division
Trial Court No. DR 2015 0022

Judgment Affirmed

Date of Decision: May 20, 2019

APPEARANCES:

    *William C. Emerick* for Appellant

    *Richard W. Miller, III* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Valerie Parkins ("Valerie"), appeals the July 31, 2018 judgment of the Allen County Court of Common Pleas, Domestic Relations Division granting plaintiff-appellee, the Administrator of the Estate of Jon Parkins (the "Estate"), a declaratory judgment stating that Valerie owes the Estate $87,703.43 as set forth in the divorce decree of Valerie and Jon Parkins ("Jon"). For the reasons that follow, we affirm.

{¶2} Jon and Valerie were married on May 11, 1984. (Doc. No. 20). On January 16, 2015, Jon filed a complaint for divorce with the Allen County Court of Common Pleas, Domestic Relations Division. (Doc. No. 1). On June 30, 2015, the trial court issued a divorce decree granting Jon's request for divorce. (Doc. No. 20). In the divorce decree, the trial court accepted and adopted the parties' separation agreement in which the parties divided all their debts, assets, and liabilities. (*Id.*). As part of the separation agreement, Jon was awarded a sum of $87,703.43 to be paid through a partial lump sum option payment ("PLOP") from Valerie's Ohio Public Employees Retirement System ("OPERS") account upon her retirement from her employment with the State of Ohio. (*Id.*).

{¶3} Jon died on May 13, 2016. (Doc. Nos. 50, 62, 67). On August 1, 2016, Valerie retired. (Doc. No. 61). To date, she has not paid Jon or the Estate any

portion of the $87,703.43 contemplated in the June 30, 2015 divorce decree and separation agreement. (*Id.*).

{¶4} On September 8, 2016, Jon's trial counsel filed a motion for citation in contempt against Valerie for failing to divide her OPERS account upon her retirement and pay the Estate the sum of $87,703.43. (Doc. No. 22). On November 16, 2016, Jon's trial counsel filed a motion to stay any further disbursements from Valerie's OPERS account. (Doc. No. 27). That same day, Jon's trial counsel filed a motion for citation in contempt, which was identical to the September 8, 2016 motion for citation in contempt except for the addition of an affidavit in support signed by Jon's trial counsel. (Doc. Nos. 28, 29). (*See* Doc. No. 22). On February 3, 2017, the trial court issued a judgment entry granting Jon's trial counsel's motion to stay any further disbursements from Valerie's OPERS account. (Doc. No. 35). On March 15, 2017, Jon's trial counsel filed a motion for relief from judgment under Civ.R. 60(B) asking the trial court to vacate the June 30, 2015 judgment entry and separation agreement. (Doc. No. 38). That same day, Valerie filed a motion to vacate the February 3, 2017 judgment entry staying further disbursements from her OPERS account. (Doc. No. 39). On March 17, 2017, Phil Parkins, Administrator of the Estate of Jon Parkins (the "Administrator"), requested to be joined as a party. (Doc. No. 40). The Administrator was joined as a party on March 27, 2017. (Doc. No. 41). On March 29, 2017, the trial court vacated its February 3, 2017 judgment

staying further disbursements from Valerie's OPERS account and granted Jon's trial counsel's oral motion to dismiss the September 8, 2016 motion for citation in contempt against Valerie. (Doc. No. 44). On April 5, 2017, the trial court amended its March 27, 2017 judgment entry to reflect that the Estate would be substituted as the party in interest for Jon, rather than joined as a party. (Doc. No. 46).

{¶5} On April 11, 2017, Jon's trial counsel filed an amended motion for relief from judgment under Civ.R. 60(B). (Doc. No. 47). In support of the amended motion for relief from judgment, Jon's trial counsel argued that the June 30, 2015 divorce decree should be vacated in part because it was impossible to accomplish the property equalization using the method chosen by the parties, the PLOP from Valerie's OPERS account, and an alternative method of achieving the equalization, a division of property order ("DOPO"), was no longer available due to Jon's death. (*Id.*). On August 29, 2017, the trial court filed a judgment entry dismissing the April 11, 2017 amended motion for relief from judgment under Civ.R. 60(B) for being untimely filed, but found that the impossibility of complying with the PLOP provision of the parties' divorce decree did not negate Valerie's underlying obligation to the Estate. (Doc. No. 54).

{¶6} On September 21, 2017, the Estate filed a complaint for declaratory judgment requesting the trial court to declare that the Estate is entitled to the sum of $87,703.43 as a valid property interest from Valerie. (Doc. No. 56). On November

9, 2017, Valerie filed an answer to the Estate's complaint for declaratory judgment. (Doc. No. 59). On January 19, 2018, the Estate filed its brief in support of its complaint for declaratory judgment. (Doc. No. 62). That same day, Valerie filed her motion for summary judgment as to the Estate's complaint for declaratory judgment. (Doc. No. 63). On January 25, 2018, Valerie filed her response to the Estate's brief in support of its complaint for declaratory judgment. (Doc. No. 64). On January 26, 2018, the Estate filed its memorandum in opposition to Valerie's motion for summary judgment. (Doc. No. 66).

{¶7} On July 31, 2018, the trial court dismissed Valerie's motion for summary judgment for being untimely filed because the trial court had previously set a hearing date and Valerie did not move for leave to file the motion for summary judgment. (Doc. No. 67). The July 31, 2018 judgment entry also granted the Estate's complaint for declaratory judgment, finding that the amount of $87,703.43 due and owing to the Estate as set forth in the parties' divorce decree is a "valid, separate obligation" that was not extinguished by Jon's death. (*Id.*).

{¶8} Valerie filed her notice of appeal on August 30, 2018. (Doc. No. 69). She raises two assignments of error, which we will address together.

**Assignment of Error No. I**

**The trial court erred and acted contrary to law when it determined that a specific sum certain distribution from an Ohio Public Employees Retirement System survives the death of the alternate payee.**

**Assignment of Error No. II**

**The trial court erred and acted contrary to law without jurisdiction and abused its discretion when it determined that an amount was still due and owing from the defendant/appellant when the court had previously ruled that a Civ. R. 60(B) motion as well as a citation for contempt were unavailable to alter the terms of the separation agreement agreed to between the parties.**

{¶9} In her assignments of error, Valerie argues that her obligation to pay the $87,703.43 sum referenced in the parties' divorce decree was extinguished upon Jon's death because the divorce decree referenced payment from Valerie's OPERS account in the form of a PLOP. Valerie contends that under R.C. 3105.86, Jon's rights to her OPERS account terminated, and with it, any right to the $87,703.43 contemplated in the parties' divorce decree. Moreover, Valerie argues that the trial court erred when it granted the declaratory judgment in favor of the Estate because the $87,703.43 referenced in the property agreement does not survive Jon's death and does not represent an underlying obligation. In support of her position, Valerie argues that the trial court dismissed the Estate's motion for citation in contempt and amended motion for relief from judgment under Civ.R. 60(B) and had therefore determined that such actions were not available to alter the terms of the divorce decree. Valerie asserts that because the Estate's motion for citation in contempt and amended motion for relief under Civ.R. 60 were dismissed, the trial court erred when it granted the Estate's request for declaratory judgment.

{¶10} "A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, ¶ 8, citing *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 312 (1951). "The purpose of a declaratory judgment action is to dispose of 'uncertain or disputed obligations quickly and conclusively,' and to achieve that end, the declaratory judgment statutes are to be construed 'liberally.'" *Id.*, quoting *Ohio Farmers Indemn. Co. v. Chames*, 170 Ohio St. 209, 213 (1959).

{¶11} A trial court's determination of matters of law in a declaratory judgment action are reviewed under a de novo standard of review. *Brown v. Brown*, 3d Dist. Hardin No. 6-17-10, 2017-Ohio-8938, ¶ 20, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 13.

{¶12} Jon and Valerie's separation agreement, which was incorporated into the parties' divorce decree, contains the following provisions:

STUDENT LOANS

The Wife shall assume and pay and hold the Husband harmless from liability as to the student loan debt owed to Navient.

RETIREMENT ACCOUNT/ DOPO

The parties agree that the Wife is a participant in the Public Employees Retirement System through her place of employment. The

parties further agree that the Wife's current value for her OPERS Account is valued at $231,542.28. The parties further agree that the Husband's Retirement Account is valued at $22,811.41, and that the Husband's interest in the OPERS shall be reduced by the Wife's interest in the Husband's Retirement Account. In order to equalize the distribution of marital assets, the parties agree that the Wife owes to the Husband the sum of $104,365.43, less the sum of $16,662.00, which amount represents the Husband's one-half (1/2) share of the debt owed to Navient, for a net balance due and owing from[1] [sic] the Husband in the amount of $87,703.43. Said sum shall be payable to the Husband through a Partial Lump Sum Option Payment (PLOP) upon the Wife's retirement. The Husband shall assume and pay any tax liabilities owed in conjunction therewith. Any remaining interest in the OPERS account shall be the separate property of the Wife, free and clear of any claims of the Husband.

---

[1] The divorce decree states that there is a "net balance due and owing *from* the Husband in the amount of $87,703.43." (Doc. No. 20). However, in context, it is clear that the parties intended the balance to be due and owing to Jon ("the Husband"), rather than from Jon, and the phrase cited above should read "from the Wife" or, alternatively, "to the Husband." The parties do not dispute that the $87,703.43 referenced in the divorce decree was to be paid from Valerie rather than Jon. As noted by the trial court, "[i]t is clear from the tenor of the Judgment Entry and all other matters associated with the pleadings of these parties that the sum of $87,703.43 was owed to the husband and not from the husband." (Doc. No. 67).

The parties further agree that a Division of Property Order shall issue against the Wife's OPERS Account in favor of the Husband in order to perfect the Agreement and intent of the parties. * * *

The Husband shall have as his separate property, free and clear of any claims of Wife, all interest in retirement benefits, profit sharing and stock ownership, and 401(k) plans incidental to his employment with Tower Automotive.

The Wife shall have as her separate property, free and clear of any claims of the Husband, all interest in the State of Ohio Deferred Compensation Plan.

* * *

(Doc. No. 20).

{¶13} As the overall equitable division of property was to be carried out by a PLOP paid to Jon from Valerie's OPERS account upon her retirement, the parties set out to effectuate its implementation following the journalization of the parties' divorce decree. However, the parties quickly discovered that a PLOP from Valerie's OPERS account, as referenced in the divorce decree, would not suffice to carry out the equitable division of property.

{¶14} The record demonstrates that following the journalization of the divorce decree on June 30, 2015, Jon's trial counsel contacted representatives from

OPERS regarding the property settlement and was informed that a PLOP from Valerie's account would not satisfy the $87,703.43 obligation set forth in the parties' divorce decree. (Joint Ex. 1). Thereafter, Jon's trial counsel contacted Valerie's trial counsel with the information he received from the OPERS representative regarding the impossibility of carrying out the property settlement via a PLOP from Valerie's OPERS account. (*Id.*). Jon's trial counsel submitted a proposed DOPO to OPERS for preapproval in an attempt to satisfy Valerie's obligation to Jon under the June 30, 2015 property settlement. (Joint Exs. 2, 3). However, counsel for OPERS informed Jon's trial counsel in writing on February 9, 2016 that the proposed DOPO could not be preapproved because (1) the name, date of birth, address, or Social Security number of the Participant did not match OPERS's records and (2) the proposed order had selected two methods of payment when only one payment method should have been selected. (Joint Ex. 3). On February 23, 2016, Jon's trial counsel submitted another DOPO to OPERS for preapproval. (Joint Exs. 4, 5). However, counsel for OPERS informed Jon's trial counsel in writing that the proposed DOPO could not be preapproved because the proposed order once again had two methods of payment selected. (Joint Ex. 5).

{¶15} On May 3, 2016, just ten days before Jon's death, Valerie's trial counsel wrote to Jon's trial counsel with a proposed resolution. (Joint Ex. 6). In her letter, Valerie's trial counsel informed Jon's trial counsel that he had been in

contact with an OPERS representative who informed him that under the provisions of Valerie's OPERS plan, the alternate payee is only able to receive one-half of any lump sum payment. (*Id.*). Valerie then proposed paying Jon a lump sum of $50,000.00 prior to her retirement to satisfy a portion of the property settlement. (*Id.*). To satisfy the remaining balance, Valerie proposed paying Jon $250.00 per month for ten years commencing on the first month following her retirement. (*Id.*).

{¶16} Jon died on May 13, 2016. That same day, counsel for OPERS sent a letter to Valerie informing her that pursuant to R.C. 3105.86, an alternate payee's rights under an approved DOPO terminate upon the death of the alternate payee. (Joint Ex. 7).

{¶17} Valerie Parkins retired on or about August 1, 2016. (Doc. No. 61). The parties stipulated that other than an unidentified amount paid by Valerie toward a marital debt, Valerie has not paid toward the $87,703.43 owed to Jon under the June 30, 2015 divorce decree. (*Id.*). (*See* Joint Ex. 10).

{¶18} Valerie contends that the trial court erred by determining that an underlying obligation for $87,703.43 exists because the language of the parties' divorce decree specifies that the amount "shall be payable to the Husband through a * * * [PLOP] upon the Wife's retirement." (Appellant's Brief at 8). Valerie opines that because Jon died prior to her retirement, Jon's interest in her OPERS account terminated. (*Id.*). Moreover, Valerie argues that the trial court is unable to retain

jurisdiction over property distributions in order to permit the Estate to recover funds in another manner. (*Id.*).

{¶19} In support of her argument, Valerie relies on *Hipp v. Hipp*, 6th Dist. Huron No. H-08-027, 2009-Ohio-3209. In that case, under the terms of the parties' divorce decree, the Husband was to assign to the Wife one-half of the value of his OPERS account. *Id.* at ¶ 5. The parties' divorce decree also required the parties to maintain a term life insurance policy equal to the value of one-half of the Husband's OPERS account. *Id.* However, the Husband died prior to retirement, and the parties never obtained the life insurance policy referenced in the divorce decree. *Id.* at ¶ 3, 7. After her claim against the Husband's estate for half of the retirement benefits was rejected, the Wife and the Husband's estate both petitioned the trial court for summary judgment. *Id.* at ¶ 4. The trial court granted summary judgment in favor of the Husband's estate. *Id.* The appellate court found that the trial court did not err in awarding summary judgment in favor of the Husband's estate because "the divorce decree awarded [Wife] an assignment of a portion of the future benefits in the decedent's retirement account" and "sought to counterbalance" the uncertainty of the contingent property settlement with a term life insurance policy on the life of the Husband. *Id.* at ¶ 11. The trial court noted that "the divorce decree set forth an alternative method of payment to [Wife] in the event of the [Husband's] death prior to attaining the age of eligibility for retirement benefits." *Id.* at ¶ 7. The trial court

granted summary judgment in favor of the Husband's estate because the Wife was aware of the contingent nature of the Husband's retirement benefits at the time of the divorce and failed to employ the safeguards contained in the divorce decree.

{¶20} Under the circumstances in *Hipp*, it was appropriate for the trial court to grant summary judgment in favor of the Husband's estate. It is clear that the parties in *Hipp* understood at the time of the divorce decree that the Wife's entitlement to one-half of the Husband's OPERS account was entirely contingent on the Husband surviving until he was able to retire. Thus, the parties contemplated securing Wife's contingent interest through the insurance policy. Therefore, when the Husband died prior to retirement, the Wife's contingent interest in one-half of his OPERS account was extinguished.

{¶21} However, *Hipp* is readily distinguishable from the present case. First, the parties' roles in the action are reversed, with the alternate payee, Jon, predeceasing the participant instead of the participant predeceasing the alternate payee. Here, unlike in *Hipp*, the participant retired and is presently receiving retirement benefits. Moreover, in *Hipp*, the parties' divorce decree divided the participant's retirement benefit with an additional provision of insuring the payment of the retirement benefit with a life insurance policy, a provision not present in Jon and Valerie's divorce decree. Additionally, in *Hipp*, it appears that the division of the retirement benefit was simply a division of a retirement asset, independent of

the division of the other marital assets and debts, whereas, here, the divorce decree indicates that the division of Valerie's OPERS account was part of the overall division of marital property. Thus, the instant case can be distinguished from *Hipp*.

{¶22} Valerie argues that benefits under a public retirement system, such as OPERS, do not vest until the retirement is granted. (Appellant's Brief at 10). *See* R.C. 3105.80; R.C. 3105.83; *Cosby v. Cosby*, 96 Ohio St.3d 228, 2002-Ohio-4170, ¶ 12; *Schrader v. Schrader*, 4th Dist. Hocking No. 03CA20, 2004-Ohio-4104, ¶ 21. However, Valerie's argument is misplaced as, here, the participant retired and thus, her retirement benefits vested.

{¶23} Valerie also cites to *Hiscox v. Hiscox*, 7th Dist. Columbiana No. 07 CO 7, 2008-Ohio-5209 in furtherance of her argument that under R.C. 3105.86, the potential benefits of an alternate payee terminate at the death of the retiree or the alternate payee and that the parties could have secured Jon's right in the property with an additional security for the amount of the property division, such as an insurance policy. However, Valerie's reliance on *Hiscox v. Hiscox* is misplaced. The court in *Hiscox* cited to the Revised Code for the proposition that potential benefits terminate upon the death of the retiree or the alternate payee and that the divorce decree could have required the parties to secure the rights of the contingent beneficiary through an insurance plan. However, in the instant case, the parties do not dispute that under R.C. 3105.86 the alternate payee's benefits terminate upon

the death of the alternate payee and the Estate is not arguing that OPERS should be required to carry out the division of the retirement benefits. Rather, the Estate is requesting that the court recognize the underlying property settlement.

{¶24} Here, in dispute is not the modification or clarification of a retirement asset, but rather the enforcement of a property division. The parties' divorce decree states that "[i]n order to equalize the distribution of marital assets, the parties agree that the Wife owes the Husband the sum of $104,365.43, less the sum of $16,662.00, which amount represents the Husband's one-half (1/2) share of the debt owed to Navient, for a net balance due and owing from [sic] the Husband in the amount of $87,703.43." (Doc. No. 20). Thus, the language of the divorce decree is explicit that the $87,703.43 owed from Valerie to Jon is to equalize the distribution of marital assets, and not simply to divide the retirement asset. The $87,703.43 referenced in the divorce decree was arrived at after dividing the parties' other assets and debts, including Jon's retirement account through his employer and the debt owed to Navient.

{¶25} In addition, Valerie argues that the trial court erred in granting declaratory judgment in favor of the Estate because the trial court had previously ruled that relief under Civ.R. 60(B) and a citation for contempt were not available to the Estate. However, Valerie's arguments are without merit.

{¶26} First, the trial court did not make a substantive ruling on Jon's motion for citation in contempt. Rather, Jon's trial counsel orally moved to withdraw the motion for citation in contempt without prejudice, and the same was granted by the trial court. (Doc. No. 44). Thus, contrary to Valerie's contention, the trial court did not rule that a citation for contempt was unavailable to the Estate and did not decide the merits of the motion for citation in contempt filed by Jon's trial counsel.

{¶27} Second, Valerie's argument also fails as it relates to the Civ.R. 60(B) motion. Civ.R. 60(B) states:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect[.]

Civ.R. 60(B)(1).

{¶28} Here, the parties were mistaken as to Jon's ability to receive payment from the retirement account under a PLOP, as the parties both believed that a DOPO could be issued for a lump sum payment under a PLOP. However, the parties were mistaken that they could secure a PLOP from Valerie's OPERS account large enough to satisfy the $87,703.43 sum referenced in the divorce decree. Moreover, Jon's death modified the availability of a DOPO to effect payment of the OPERS benefits to Jon. Thus, the applicable provision of Civ.R. 60(B) was Civ.R. 60(B)(1).

However, under Civ.R. 60(B), "[a] motion [under Civ.R. 60(B)] shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment [or] order * * * was entered * * *." Jon's motion for relief from judgment under Civ.R. 60(B) was filed on March 15, 2017, more than one year after the parties' divorce decree and separation agreement was journalized on June 30, 2015. Thus, Jon's motion for relief from judgment was untimely filed.

{¶29} Moreover, because the motion for relief from judgment was based upon a mutual mistake of the parties, Jon was not able to seek relief from judgment under Civ.R. 60(B)(4)-(6), as those provisions cannot be substituted as grounds for relief from judgment in order to avoid the one-year limitation on filing motions for relief from judgment under Civ.R. 60(B)(1)-(3). Thus, the trial court denied Jon's motion for relief from judgment under Civ.R. 60(B). However, the trial court recognized in the judgment entry that "the impossibility of complying with the PLOP payment provision does not negate the obligation owed" and noted that "the [trial court] would find [sic] with recognizing the amount owed, the counsel representing the Estate of Jon Parkins may determine their remedies to enforce the payment of the $87,703.43 by all legal means available." (Doc. No. 54).

{¶30} Thus, in dismissing Jon's motion for relief from judgment, the trial court did not reach the merits of the motion, but rather resolved the motion on

procedural grounds. Moreover, the dismissal of Jon's motion for relief from judgment is independent of the Estate's complaint for declaratory judgment.

**{¶31}** Despite Valerie's objections, a complaint for declaratory judgment is an acceptable method to determine the rights and obligations of the parties in the present case. A complaint for declaratory judgment is valid in domestic relations actions. *See In re Kuntz*, 183 Ohio App.3d 154, 2009-Ohio-3316, ¶ 11 (3d Dist.). As noted in *In re Kuntz*, "once a court has made an equitable property division, it has no jurisdiction to modify its decision." *Id.*, citing R.C. 3105.171(I), *Knapp v. Knapp*, 4th Dist. Lawrence No. 05CA2, 2005-Ohio-7105, ¶ 40, and *Ricketts v. Ricketts*, 109 Ohio App.3d 746, 751 (12th Dist.1996), *abrogated on other grounds*, *Erb v. Erb*, 91 Ohio St.3d 503 (2001). "However, the trial court does retain jurisdiction to '"clarify and construe its original property division so as to effectuate its judgment."'" *Id.*, quoting *Knapp* at ¶ 40, quoting *McKinley v. McKinley*, 4th Dist. Athens No. 99 CA 52, 2000 WL 897994, *4 (June 27, 2000). Therefore, a trial court is able to clarify the meaning of a decree if it is ambiguous. *Id.*, citing *McKinney v. McKinney*, 142 Ohio App.3d 604, 608 (2d Dist.2001).

**{¶32}** Determining whether an ambiguity exists in a prior decree is a question of law. *Pierron v. Pierron*, 4th Dist. Scioto Nos. 07CA3153 & 07CA3159, 2008-Ohio-1286, ¶ 8. Thus, potential ambiguity in a prior decree is reviewed by

the appellate court de novo. *Adams v. Crawford Cty. Bd. Of Commrs.*, 3d Dist. Crawford No. 3-07-19, 2007-Ohio-6966, ¶ 16.

**{¶33}** Here, the divorce decree is not ambiguous. The parties' divorce decree provides that "[i]n order to equalize the distribution of marital assets, the parties agree that the Wife owes the Husband the sum of $104,365.43, less the sum of $16,662.00, which amount represents the Husband's one-half (1/2) share of the debt owed to Navient, for a net balance due and owing [to] the Husband in the amount of $87,703.43. Said sum shall be payable to the Husband through a [PLOP] upon Wife's retirement." (Doc. No. 20). Thus, the divorce decree is not ambiguous as it provides for the amount owed ($87,703.43) and the time that payment is due ("upon the Wife's retirement") and is not otherwise unambiguous. Therefore, the trial court did not retain the jurisdiction to "clarify and construe its original property division so as to effectuate its judgment." *Knapp* at ¶ 40. However, a declaratory judgment action may still be used, even when there is no ambiguity.

**{¶34}** Valerie contends that the trial court is making an impermissible modification of a division or disbursement of property or a distributive award by determining that the underlying obligation in the divorce decree remains due and owing. In support of her proposition, Valerie cites to R.C. 3105.171(I) which prohibits "future modification by the court" of "[a] division or disbursement of property or a distributive award" "except upon the express written consent or

agreement to the modification by both spouses." However, here, the trial court did not modify the divorce decree by determining that the underlying obligation remains due and owing.

{¶35} Here, the parties chose Valerie's OPERS account as the vehicle to effectuate the parties' division of property; however, the division of property could have been carried out in an alternative fashion. In fact, as evidenced by their actions following the filing of the divorce decree, both parties acknowledged the validity of the underlying property settlement. The parties were informed on or about December 9, 2015 that a PLOP from Valerie's OPERS account would not satisfy the $87,703.43 referenced in the divorce decree. (*See* Joint Ex. 1). Thus, the parties were aware that a PLOP from Valerie's OPERS account, as referenced in the divorce decree, would not suffice to effectuate the division of property. Yet, the parties continued to negotiate and work together to effectuate the property settlement. (*See* Joint Exs. 2-6). In fact, on May 3, 2016, just ten days prior to Jon's death, Valerie proposed paying Jon a lump sum of $50,000 prior to her retirement and monthly payments of $250.00 for the ten years following her retirement to "satisfy the remaining balance due on the sharing of the retirement benefits." (Joint Ex. 6).

{¶36} Thus, although Valerie argues that the impossibility of carrying out the division of property via a PLOP from her OPERS account negates the validity

of the underlying obligation, her actions are inconsistent with this position, as the parties knew since December, 2015 that the vehicle used to carry out the property settlement would not be a PLOP, as contemplated in the divorce. Yet, Valerie continued to acknowledge the validity of the underlying obligation, even knowing that the division of property would necessarily be carried out through alternative means. Although Jon's death terminated the ability of OPERS to carry out the division of property, it did not change the fact that the parties had previously acknowledged that the division of property was necessarily going to have to proceed by other means than the PLOP contemplated at the time of the divorce.

{¶37} While Jon's death may have terminated the right to use a DOPO to collect money from Valerie, it did not affect the viability of the underlying property settlement. A DOPO "is an order that creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, ¶ 18. "[T]he divorce decree is a final, appealable order and actually divides the property," whereas a QDRO or DOPO "is merely a tool used to execute the divorce decree." *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, ¶ 19; *Taylor v. Taylor*, 10th Dist. Franklin No. 17 AP-763, 2018-Ohio-2530, ¶ 7. Moreover, "[a] QDRO does not in any way constitute further adjudication on the merits of the pension division,

as its sole purpose is to implement the terms of the divorce decree. Therefore, it is the decree of divorce that constitutes the final determination of the court and determines the merits of the case." *Wilson* at 16. Thus, the denial of the implementation of a DOPO does not alter the provision of a divorce decree and the reference to a PLOP or DOPO does not extinguish the underlying obligation. Therefore, the trial court did not err in granting Jon's motion for declaratory judgment as the underlying obligation remains valid, even if the vehicle for carrying out the division of property may have changed.

{¶38} Valerie's assignments of error are overruled.

{¶39} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN, P.J. and WILLAMOWSKI, J., concur.**